## PARTEE *v.* THOMAS and others.

*(Circuit Court, W. D. Tennessee.* April, 1886.)

EQUITY—COSTS—DOCKET FEE—ATTORNEY'S DOCKET FEE TAXABLE ON DISMISSAL FOR WANT OF PROSECUTION.

   Where a suit had abated, after demurrer overruled and answer filed, by the death of the plaintiff, and subsequently there was granted a motion by defendant to dismiss for want of prosecution, *held,* that the attorney's docket fee of $20 was taxable under a decree awarding the defendant his costs.

Motion to Retax Costs.
*Clapp & Beard,* for the motion.
*W. D. Cardwell* and *Pitts & Hays, contra.*

HAMMOND, J. I do not feel called upon here to reverse, as I am asked to do, the opinion expressed in *Goodyear v. Sawyer,* 17 Fed. Rep. 2. That case called attention to the conflict of authority on the point whether, upon the voluntary dismissal of a suit in equity after answer filed, etc., the solicitor's docket fee be taxable under Rev. St. §§ 824, 823, and 983. It sought to find some principle of interpretation for statutory language which is somewhat obscure in itself,

susceptible perhaps of varying significations, and as to which it is altogether probable that the persons who framed and passed the statute had no precise conception of its exact meaning. Following the ordinary course that courts take out of such difficulties, I endeavored to apply, as best I could, to the interpretation of a statute relating to *costs* of suits in *equity* the meaning of the terms "on final hearing," as understood in that particular branch of the law at the time of the passage of the statute and anterior thereto. The truth is, it is a rather loose expression familiar to equity lawyers of that day, and used to designate that final disposition of a case which ended it, and ordinarily resulted in a decree for costs. It might come after issue; it might come before,—whatever disposed of the case was the *"final hearing."* It was used in contradistinction to all that which preceded this final result, and which was deemed, in a large sense, interlocutory.

It might be that proceeding which was known in a strictly technical sense as "the hearing,"—not the *final* hearing,—or it might not, according to circumstances. The technical practice of the English court of chancery had been greatly modified by statute, more by custom; and all its terminology was loosely applied. These words *"final* hearing" came into use to distinguish from *"the* hearing" that last expiring proceeding which generally disposed of *the costs*. I wish to quote here briefly from chapter 27 of the first edition of Daniell's Chancery Practice, and refer, without quotation, to the opening paragraphs of the preceding chapter; the one being the opening chapter of volume 3 of the original work, and the other the final chapter of volume 2. And, before making the quotation, I refer to Mr. Justice BRADLEY's note to *Thomson* v. *Wooster,* 114 U. S. 112, S. C. 5 Sup. Ct. Rep. 792, to my own note to *U. S.* v. *Anon.,* 21 Fed. Rep. 766, and to the learned Chancellor COOPER's note to the corresponding chapter of Daniell, in the fifth American edition, volume 2, p. 1376. These notes will explain the importance of the following quotation, and generally emphasize the necessity, in our federal practice, of caution in these matters not to be misled by implications based on mere words, overlooking the constant changes that legal terminology undergoes in the peculiarities of our American systems. Mr. Daniell says:

"As it is the usual practice of the court, where, upon the hearing, it directs either an issue or a case or a reference to a master, not to give any directions upon the subject of costs till after the verdict or certificate of the judges has come in, or till the master has made his report, (a practice which appears to have been adopted for the purpose of accelerating the *final termination* of the suit,) it generally happens that the costs of the suit are taken into consideration at the time when the cause comes on *for hearing for further directions,* and that on such occasions, as soon as the further directions are disposed of, the court makes such order with regard to the costs as it thinks the justice of the case requires," etc.

This was the *"final* hearing," and the books of practice give abundant evidence that there was good cause for falling into the habit of

using this phrase to express and distinguish a possible and often occurring proceeding which came after "*the hearing;*" that is to say, *after* "that submission of it to the court in such shape as the parties choose to give it, with a view to a determinattion whether the plaintiff or the libelant has made out the case stated by him in his bill or libel as the ground for the permanent relief which his pleading seeks, on such proofs as the parties place before the court, be the case one of *pro confesso,* or bill, or libel and answer, or pleadings alone, or pleadings and proof." *Wooster* v. *Handy,* 23 Fed. Rep. 56. Most deferentially I submit that the words of the statute do not necessarily imply that ceremony which is described by the last above quotation. They may describe that, of course, if it happen to be in fact the final hearing; but generally they do not, but rather that other hearing described by Mr. Daniell in the above extract, which *finally* terminates the case; and it is "*on*" this final hearing, but not *for* it that the attorney's fee is taxable, and it is not taxable *before* that time. It is the confusion of these two hearings that causes the trouble in these cases.

If we examine the law of costs in courts of equity,—and that branch of it was as well understood as others,—we can see why the statute preferred to allow a lump sum at the end of the suit to undertaking to regulate allowances on interlocutory proceedings for solicitor's costs, and determining at the *final* hearing what should be decreed, in that behalf, *to the parties to the suit, as against each other.* The notion that congress, in the midst of that law, intended to ignore all other services, and give the lawyer a fee of $20 for the particular labor of ceremoniously *trying the case* on its merits, no matter how much or how little, but necessarily *always some little,* seems untenable, to say the least of it. Combining the law of costs in all departments, and taking the statute as a whole, it seems to be a reasonable construction to hold that congress intended to abolish the idea of giving particular fees for particular services of the lawyer, itemized somewhat like a grocer's bill; and at the end to allow the party, *on the score of attorney's costs,* an aggregate sum of money, not at all for any particular service, *but for all that was done in the case from beginning to end:* In cases at law, if there had been a trial by jury, $20; not *for* a trial by jury, but in a case tried by jury, for all services rendered, $20. If there be judgment without a jury, $10; not $10 *for* the ceremony of taking a judgment without a jury, but for all services in the case, that sum. If the case be discontinued, $5; not *for* the discontinuance itself, but for the entire service in a discontinued case.

But in all equity and admiralty cases, (with the exception mentioned in the proviso,) because of their peculiarities and comparatively larger amount of professional work, this plan of gradation was dropped, and, when finally disposed of, $20 were allowed on the score of attorney's costs, whether tried before a jury, as they might be, or

not, as they generally are,—whether disposed of in one way or another,—so that they are *finally* heard, or, in other words, *ended.* The contrary doctrine reverses this plan of allowing one sum for all services, and relegates the allowance to one fee—and a very large one it may be under some circumstances—for a particular service, which is often the slightest in the case, and that, too, the most difficult of ascertaining and defining; for, it is often impossible to tell whether a given state of facts constitute "a trial before a jury" or "a final hearing," or not; and, besides, we must, on that theory, go beyond the record, and determine *aliunde* whether the fee be chargeable, by ascertaining somehow by evidence whether the particular service was in fact rendered. It establishes the manifest injustice of refusing any allowance, in equity and admiralty cases, after the work is all done, if the plaintiff chooses to dismiss a lost cause, in order to evade the fee, rather than submit it for formal decision,—a result not possible in law cases, and as to which there is no reason for so singular a distinction. The fallacy consists in looking at the act as giving a fee *to the lawyer* for a specific item of service, when it is an allowance *to the party to the suit* in lieu of a bill of costs taxable before that time, and including many different items of attorney's taxable costs. Construed as this opinion contrues it, there need never be any doubt about the taxable costs for attorney's fees due the parties in any case, and the statute is homogeneous as to attorney's costs to be taxed in all branches of the jurisdiction. Construed the other way, it is always hard to tell whether the fee should be taxed in equity and admiralty cases; it works injustice in many of them, establishes senseless distinctions, and involves much confusion.

I have not the least doubt that congress meant to give, in every equity and admiralty case, a taxed fee of $20 whenever and however it was finally ended, with the single exception specifically mentioned in the statute, and that it did not intend to merely provide a fee for the ceremony of trying the case before the judge on its merits, leaving all other services unprovided for, and without any fee at all, and devolving upon the court in those cases to determine, on facts not in the record, whether or not they were so far tried "on the merits" as to be charged for in the bill of costs; and thus substituting those words "tried on the merits" for "final hearing," as used in the statute. I have the word of the original author of the statute, then a representative and now a senator in congress, for the construction I give the act. He thinks the case of *Goodyear* v. *Sawyer, supra,* correctly construes it; and while, of course, this is no technical support for that case, it gratifies me to know that he approves it, for he is a competent and trustworthy interpreter of that statute, and an able lawyer.

Nevertheless, since my brethren elsewhere have not approved that ruling, and uniformity of practice may be of more importance than consistency or even correctness of judgment, I shall, when the point again arises, consider whether I should abandon my own matured con-

victions, and conform our practice to that of other courts by a reversal of that opinion, in deference to theirs. *Wooster* v. *Handy*, 23 Fed. Rep. 49; *Mercartney* v. *Crittenden*, 24 Fed. Rep. 401; *Consolidated, etc., Co.* v. *American, etc., Co.*, Id. 658. But see *Andrews* v. *Cole*, 20 Fed. Rep. 410.

Plausible, however, as is the suggestion that I shall now reverse it, I do not think this case requires that course, and I reserve the point for further reflection. Here the facts are that the case was dismissed for want of prosecution, *on motion of the defendants*, with full notice and under peculiar circumstances, not at all like any of the other cases. In *Mercartney* v. *Crittenden, supra*, the *plaintiff* dismissed the bill voluntarily, after demurrer overruled and answer filed. In *McLean* v. *Clark*, 23 Fed. Rep. 861, there was a demurrer overruled and answer filed, the fee being claimed, *as if* upon a final hearing; and it was properly denied, since the case did not, as in *Price* v. *Coleman*, 22 Fed. Rep. 694, go off upon demurrer without further proceedings. But in this case, when the demurrer was overruled, as reported in *Partee* v. *Thomas*, 11 Fed. Rep. 769, an answer was filed and the cause stood at issue. The plaintiff subsequently died. The suit thus became defective, but what was the precise technical effect of the death upon the right of the defendant as to costs, or how it might be properly cleared from the docket, if at all, without revivor, may be doubtful. Beames, Eq. Costs, 195; 2 Daniell, Ch. Pr. (1st Ed.) 359, 360; Id. (5th Ed.) 1506 *et seq*. We were relieved from the consideration of the matter of proper practice in that regard by the action of the parties. Following the state practice, (as is generally done, without objection, in all doubtful emergencies, notwithstanding equity rule 90,) the defendants suggested and proved the death of the plaintiff, and gave notice to the personal representatives, or heirs at law, and to counsel of record, of a motion to dismiss for want of prosecution, if a revivor should not be had. The representatives not desiring to revive, and being willing that the case should be thus disposed of, the motion was granted, and there was a judgment against them and the surety on the cost-bond for costs. It is impossible to say certainly how far the doctrine that there must be "a trial on the merits" to entitle the parties to a taxation of the docket fee is to be pressed in this direction, or how far, operating in that way, it shall properly go in denying the fee in a case like this, where work has been thoroughly done, which ought to give it to the party to whom costs have been awarded; for in *Wooster* v. *Handy, supra*, it is carried in an opposite direction, to the extent of giving more than one fee in a single case, and establishing that very many docket fees may be allowed, if very many "*final* hearings" should be had, in the same case. But since no case cited is a precedent for this, and being uncertain how to apply the principle contended for so that it shall operate uniformly in all directions with reasonable satisfaction to a sense of justice to those concerned or interested in the bill of costs, I feel, with my convic-

tions of the meaning of the statute, that, while I should possibly follow the precedents in judgment, I should not lead them beyond the strict limits they define by their own peculiar facts. Motion disallowed.